13301

YOUNGBLOOD v. SOUTHERN RY. CO. *ET AL.*

(164 S. E., 431)

*Messrs. Harley & Blatt* and *F. G. Tompkins,* for appellants,

*Messrs. Wolfe & Wolfe, R. C. Holman* and *Brown & Bush,* for respondent.

December 14, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action for damages was commenced in May, 1924, by the plaintiff, as administratrix of the estate of Cleveland J. Youngblood, deceased, for the alleged wrongful death of her intestate. The undisputed facts show that on the morning of January 3, 1924, Youngblood, who was a train conductor in the employ of the defendants, received fatal injuries resulting from a head-on collision of two of the defendants' trains, about three miles west of the City of Orangeburg. The action was brought and tried under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), it being agreed that at the time of the accident Youngblood and the defendants were engaged in interstate commerce.

The plaintiff alleged, among other things, that the injuries received by her intestate, and resulting in his subsequent death, were due to the negligent acts of the defendants, in

that they had incompetent officers and agents to signal and direct the train which Youngblood was operating as conductor, and in that these officers and agents did negligently signal and direct its movements, bringing about the collision which resulted in the injury and death of Youngblood. The defenses interposed were a general denial, contributory negligence, and assumption of risk.

The case was first tried at the March, 1925, term of Court of Common Pleas for Barnwell County; Hon. W. H. Townsend presiding. A verdict was directed for the defendants, but on appeal to this Court the judgment was reversed and the case remanded for a new trial, 137 S. C., 47, 134 S. E., 660. The case was tried again in June, 1927; Hon. H. F. Rice presiding. The defendants' motion for a new trial was overruled, and the jury found for the plaintiff $35,000.00. On appeal to this Court, the judgment below, because of certain errors of law, was reversed, and a new trial ordered. 152 S. C., 265, 149 S. E., 742, 77 A. L. R., 1419. The case was tried for the third time in September, 1930; Hon. T. S. Sease presiding. The defendants again made a motion for a directed verdict, which was refused, and the jury found for the plaintiff $12,500.00. A motion for a new trial was also made and refused, and the defendants now come to this Court on appeal.

The exceptions present two questions: (1) Did the Court err in refusing to direct a verdict for the defendants? (2) Was there error in overruling the motion for a new trial?

The motion for a directed verdict was made upon the following grounds:

"1. That the only reasonable inference to be drawn from the entire testimony is that the death of the plaintiff's intestate was caused solely by his own negligence and recklessness.

"2. That the entire testimony is susceptible of but one reasonable inference, namely, that the danger of the situation resulting in the death of plaintiff's intestate was so ob-

vious that an ordinarily careful person would have observed and appreciated the same, and hence plaintiff's intestate assumed the risks thereof.

"3. That the only reasonable inference to be drawn from the entire testimony is that the proximate cause of the injuries resulting in the death of plaintiff's intestate was the intestate's own violation of a positive meet order, which he had in his possession, not fulfilled, superseded or annulled.

"4. That there is no evidence of actionable negligence on the part of the defendants.

"5. That there is no evidence as to pecuniary loss sustained by the beneficiaries named in the complaint, as the result of the death of plaintiff's intestate, and hence no evidence upon which to base an award of damages."

It is agreed that the testimony offered and admitted at the last trial of the case is practically the same as that offered and received on the first and second trials, and considered by this Court on the first and second appeals. It was held, on those appeals, as will be seen by reference to the decisions, that the evidence was sufficient to take the case to the jury on the question of actionable negligence on the part of the defendants, and this in spite of any contributory negligence on the part of Youngblood. The defendants have asked and received permission to review these decisions. They contend that a careful examination of the testimony discloses that Youngblood's injuries, resulting in his death, were due solely to his own negligence and recklessness, and ask that the Court's holding with regard to this question, on the two former appeals, be overruled, and that a verdict be entered up for the defendants under Rule 27.

We do not deem it necessary to review the testimony at length. As we have stated, it is substantially the same as that offered and received on the first and second trials. The Court, in its opinion reported in 137 S. S., 47, 134 S. E., 660, 661, in deciding this question, went

somewhat fully into the testimony; and what is said there, in reviewing the evidence, is equally applicable here:

"The testimony shows that on the morning of the day of the collision the engine of a freight train going toward Columbia was disabled at Ft. Moote, a point about 25 miles west of Orangeburg. The company kept a switching crew at Branchville about 18 miles east of Orangeburg, which crew consisted of Youngblood, the conductor, and an engineer and a fireman, and was a night crew. The defendants, through their dispatcher at Charleston, ordered the switching crew to proceed in a westerly direction from Branchville with an engine and tender to carry to Andrews, the company's yards at Columbia, the freight train at Ft. Motte. The train set out from Branchville and operated by Youngblood as conductor was designated as extra 483. At the same time a freight train designated as extra 723 was moving over the same line of road in an easterly direction from Columbia toward Charleston. In view of the necessity that these two trains should meet and pass each other at some point on the road, the dispatcher at Charleston sent the following order, known in railroad circles as a 31 order, to Branchville and Orangeburg: 'Extra 723, east, gets this order and meets extra 483, west, at Orangeburg, engine 483 run extra from Branchville to Andrews.' This order was delivered to Youngblood before he left Branchville.

"Rule 208 of the defendants' rule book is as follows:

" 'A train order to be sent to two or more offices must be transmitted simultaneously to as many of them as practicable. When not sent simultaneously to all, the order must be sent first to the superior train.

" 'The several addresses must be in the order of superiority of trains, each office taking its proper address, and, when practicable, must include the operator at the meeting or waiting point.

" 'Copies of the order addressed to the operator at the

meeting or waiting point must be delivered to the trains affected until all have arrived from one direction.

" 'A train order must not be sent to a superior train at the meeting point if it can be avoided. When an order is so sent, the fact will be stated in the order, and special precautions must be taken to insure safety.'

"The words 'and operator' in an address in a 31 order mean that the operator is to make five copies of the message, one to be kept by him and two to be delivered to the crew of each train. In case the words 'and operator' are omitted, the operator makes but three copies, one copy to be retained by himself and two to go to the crew of the superior train. There is conflict in the testimony as to the use of the words 'and operator' in the address of the above order, the dispatcher at Charleston asserting that he used them in sending the order, and the copy of the order in his records containing them, while the copy of the order in the records of the operator at Orangeburg does not contain them. It appears that the operator at Orangeburg made only three copies of the order, one for himself and two for the crew of extra 723, which two, however, were never delivered to extra 723 because the collision occurred several miles west of Orangeburg, and before extra 723 reached that city.

"Leaving Branchville, extra 483 proceeded in the direction of Orangeburg; and on approaching the station at Orangeburg, within 100 yards of same, the semaphore being held on him, the engineer blew four blasts of the whistle as a signal for directions for the movement of his train. In the meantime. Tyson, operator at Orangeburg, according to his testimony, advised the chief dispatcher at Charleston as to the status of extra 483, and was told by him to clear him (Youngblood), and let him go to the west end of side track or yard at Orangeburg. Rogers, the dispatcher, testified that he told Tyson to clear him (Youngblood), and to tell him to go to the west end pass track and wait on extra 723. For some reason, however, Tyson did nothing except to drop the

semaphore. Youngblood then continued with his train in a westerly direction, and soon afterward the wreck occurred.

"There is conflict in the testimony as to whether the dropping of the semaphore, the indication of which, according to the defendants' rule book, is 'proceed,' indicated to Youngblood that his previous orders had been fulfilled, and that he might proceed to his destination, or merely that the Orangeburg operator had no further orders for him, and that he should carry out the order he already held by meeting extra 723 at Orangeburg.

"The movement of the trains was entirely in the hands of the dispatcher and the operator, who were responsible for the proper movement and signaling thereof. Over these agents of the defendants the conductor had no control, but in fact received his orders from them. * * *

"There was testimony tending to show negligence on the part of the defendants in the matter of signaling and directing the movement of the trains in question. The meet order being sent to the superior train at the meeting point, a situation arose, which under the defendants' rule, required special precautions to insure safety. A question of negligence on the part of the defendants arises in connection with the sending of the meet order by the dispatcher at Charleston or its disregard by the operator at Orangeburg. The operator at Orangeburg also failed to stop the train and give the crew the verbal instructions which the dispatcher at Charleston testified that he had directed him to give. Hence we are of the opinion that, in spite of any contributory negligence on the part of the deceased, Youngblood, the whole matter should have been submitted to the jury for their determination."

We are still of opinion, after another careful examination of the testimony, that there was substantial evidence to take the case to the jury on the question of actionable negligence on the part of the defendants as a proximate cause of the injuries and death of Youngblood. We, therefore, conclude

that the trial Court properly overruled the defendants' motion for a directed verdict made upon the first four grounds above set out.

With regard to the fifth ground, counsel for the defendants contend that, as the mortuary tables were not introduced in evidence, the jury had no way of determining how long plaintiff's intestate would probably have lived, although the life expectancy of the intestate and of the beneficiaries was .an indispensable factor in computing the amount of the reasonably expected pecuniary benefits.

While the testimony on this point is not quite as full as it might have been, the. evidence is undisputed that Youngblood was thirty-nine years old and in good health at the time of his death; that at that time and prior thereto he was in the employ of the defendants, and that he received from them .as compensation for his services about $2,300.00 or $2,400.00 a year; that he left a wife and six children, for whose benefit this action was brought; their names and ages being also testified to. The evidence further showed that the intestate and his wife and children were living together, and that the wife and children were dependent upon, and were supported by, him. This evidence, we think, was sufficient to take the case to the jury on this point, and to enable them to determine and fix the amount which the beneficiaries might reasonably expect the intestate to contribute toward their pecuniary support. It was unnecessary to introduce the mortuary tables in evidence, if there was other evidence, though circumstantial, from which the jury might determine and fix the amount of reasonably expected pecuniary benefits.

The grounds of the motion for a new trial were the same as those of the motion for a directed verdict, with the additional ground: "That the verdict is grossly excessive, and contrary to the great weight of the evidence." From what we have said in disposing of the alleged error on the part of

the trial Court in refusing to grant a directed verdict, it is evident that the trial Judge committed no error in denying the motion for a new trial, unless in overruling the additional ground above set out. Counsel for appellants, however, have not argued or pressed the question made by this ground; and we apprehend that, even if they had, it could not be sustained under the decisions of this Court.

The exceptions are overruled, and the judgment below is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.